1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANDERSON P. THURSTON,                    No.  2:18-cv-0527 CKD P

12                Plaintiff,

13        v.                                  ORDER AND

14   R. YOUNGER,                              FINDINGS AND RECOMMENDATIONS

15                Defendant.

16

17        Plaintiff is a California prisoner proceeding pro se with an action for violation of civil

18   rights under 42 U.S.C. §1983.  Plaintiff seeks damages.  This action is proceeding on a claim

19   arising under the Eighth Amendment.  Defendant's motion for summary judgment (ECF No. 39)

20   is before the court.  For the following reasons the court recommends that the defendant's motion

21   be denied.

22   I.  Summary Judgment Standard

23        Summary judgment is appropriate when it is demonstrated that there "is no genuine

24   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

25   Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

26   "citing to particular parts of materials in the record, including depositions, documents,

27   electronically stored information, affidavits or declarations, stipulations (including those made for

28   purposes of the motion only), admissions, interrogatory answers, or other materials. . ."  Fed. R.

1

1   Civ. P. 56(c)(1)(A).

2          Summary judgment should be entered, after adequate time for discovery and upon motion,

3   against a party who fails to make a showing sufficient to establish the existence of an element

4   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

5   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an

6   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

7   Id.

8          If the moving party meets its initial responsibility, the burden then shifts to the opposing

9   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

10  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

11  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

12  of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

13  and/or admissible discovery material, in support of its contention that the dispute exists or show

14  that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed.

15  R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

16  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

17  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

18  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

19  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

20  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

21         In the endeavor to establish the existence of a factual dispute, the opposing party need not

22  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

23  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

24  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

25  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

26  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

27  amendments).

28         In resolving the summary judgment motion, the evidence of the opposing party is to be

2

1    believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

2    facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

3    U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

4    obligation to produce a factual predicate from which the inference may be drawn.  See Richards

5    v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

6    (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

7    simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

8    taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

9    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

10   II.  Plaintiff's Allegations

11          In his March 12, 2018 complaint, plaintiff alleges as follows under the penalty of perjury:

12          1.  Defendant Younger is a correctional officer employed by the California Department of

13               Corrections and Rehabilitation (CDCR) at Mule Creek State Prison.

14          2.  On April 5, 2017, defendant opened plaintiff's cell door at the request of an inmate

15               named Jameson.  Plaintiff left his cell to ascertain why his cell door was opened.

16               After plaintiff left his cell he was stabbed by Jameson with a manufactured knife; once

17               in the chest, once on his left leg, and twice on his right leg.

18          3.  During the attack, defendant watched and smiled and took no action to stop Jameson.

19               There were no other staff in the vicinity during the attack.

20          4.  There was no legitimate reason for defendant to open plaintiff's cell door.

21          5.  During the attack, defendant had a rifle and a clear shot at Jameson but defendant did

22               not fire.

23          6.  Plaintiff had surgery with respect to his injuries.

24   III.  Applicable Eighth Amendment Standards

25          Under the Eighth Amendment, "prison officials have a duty to protect prisoners from

26   violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal

27   quotation marks, ellipsis, and citation omitted).  A prison official may be held liable for an assault

28   suffered by one inmate at the hands of another only where the assaulted inmate can show he

3

1    suffered injury as a result of, at minimum, the prison official's deliberate indifference to a

2    substantial risk of harm.  Id. at 834, 837.

3    IV.  Defendant's Arguments and Analysis

4         First, defendant argues there is no genuine issue of material fact as to whether the injuries

5    sustained by plaintiff on April 5, 2017 were the result of defendant's deliberate indifference to a

6    substantial risk of harm.

7         In his affidavit, defendant asserts as follows:

8    1.   On April 5, 2017, he was the control booth officer in the cellhouse where plaintiff was

9         attacked by inmate Jameson.  As the control booth officer, defendant controlled the

10        opening of cell doors.

11   2.   On that day, defendant had no reason to believe Jameson meant plaintiff harm.

12   3.   Jameson was an inmate porter who was permitted to be in cellhouse common areas

13        unsupervised.

14   4.   Defendant neither admits nor denies that he opened plaintiff's cell door immediately

15        prior to Jameson attacking plaintiff, but defendant offers no suggestion as to how the

16        cell door could have opened without defendant opening it from his position in the

17        control booth.

18   5.   Around 7:32 a.m., defendant observed plaintiff and Jameson "fighting."  Specifically,

19        defendant saw Jameson shoving plaintiff backwards.  Defendant did not see a knife.

20        During the "fight" defendant did not see any "blood or bodily injury."

21   6.   In response, defendant summoned help, opened the doors to the cellhouse so staff

22        could enter quickly, pointed his 40 mm launcher at both inmates and ordered them to

23        get down.   As defendant aimed his launcher, two correctional officers arrived on the

24        scene and secured plaintiff and Jameson.  One of the responding officers tended to

25        plaintiff's injuries.  Another officer located a weapon about 4 feet away from plaintiff.

26        At his deposition, plaintiff indicated:

27   1.   He did not know Jameson's motive for his attack, Dep. Tran. at 34, although he had

28        been involved in disputes with Jameson, "like [he'd] had with a lot of different

1    people." Id.

2        2.  Prior to April 5, 2017, plaintiff did not have any negative interactions with defendant.

3            Id. at 44.

4        3.  Defendant opened plaintiff's cell door in response to someone's audible request that

5            he do so.  Plaintiff assumes the request was made by Jameson as Jameson was the only

6            person present when plaintiff exited his cell. Id. at 33-36.

7        4.  Plaintiff could see a knife in Jameson's hand before Jameson attacked him with it. Id.

8            at 38.  After plaintiff was stabbed the first time, there was so much blood on the

9            ground that plaintiff slipped and fell on his back. Id. at 39.

10   In his affidavit, plaintiff adds that while being attacked by Jameson, plaintiff screamed to

11   defendant for help.  ECF No. 41 at 9.

12       Plaintiff provides the declaration of inmate John Lambert who indicates he witnessed at

13   least some of the attack on plaintiff by inmate Jameson and the response by defendant.  Most

14   notably, Lambert agrees that during the attack, he observed defendant in the control tower with

15   his block gun at his side and smiling.  ECF No. 41 at 50-52.  Inmate Lambert adds that during the

16   attack, defendant never raised his weapon, nor issue any verbal directives such as "get down" to

17   plaintiff or Jameson.  Id.

18       Finally, defendant provides the transcript of the deposition of Wayne Steve Maynor, who

19   was plaintiff's cellmate on April 5, 2017.  ECF 40.  Mr. Maynor testified at his deposition:

20       1.  Inmate Jameson and plaintiff had a "heated argument" prior to the opening of plaintiff

21           and Maynor's cell door and it seemed like they wanted to fight.  Jameson had come to

22           the cell door a few times.  Eventually, the door was opened in response to Jameson's

23           request.  Dep. Tran. at 11-15.  Plaintiff exited the cell and shut the cell door. Id. at 14.

24           After plaintiff exited the cell, plaintiff and Jameson initially continued their argument,

25           then Jameson attacked plaintiff. Id. at 11-15.

26       2.  It was not uncommon for a control booth officer to open an inmate's cell in response

27           to an inmate porter's request. Id. at 13.

28       3.  After plaintiff and Maynor's cell door was opened, plaintiff never called out to

1    defendant asking why the cell had been opened.  Id. at 14.

2    4.  After yelling something at plaintiff, Jameson pulled a knife from the right side of his

3        pants and then stabbed plaintiff.  Id. at 16.  Inmate Maynor had a clear line of sight to

4        the fight which was about 20 feet away.  Id.

5    5.  Plaintiff ended up on his back after tripping over a bench.  Plaintiff defended himself

6        as he was on the ground.  As a result of the attack there was a lot of blood on the floor.

7        Id. at 17.  There was blood on both plaintiff and Jameson.  Id. at 18.

8    6.  When plaintiff and Jameson began to fight, defendant yelled something like "knock it

9        off" and then sounded the alarm about 20-30 seconds after the attack began.  Id. at 18,

10       28, 50.  Correctional officers arrived about 20-30 seconds after that.  Id. at 37.  During

11       the attack, plaintiff was mostly on his back defending himself with Jameson standing

12       over him swinging his knife.  Id. at 37, 41.  Inmate Maynor characterized the incident

13       as an "attack" and not a "fight."  Id. at 53-54.

14   7.  When plaintiff left the cell, Maynor observed defendant standing in the control booth.

15       Id. at 25.  Initially, defendant was not holding a weapon.  Id.  When the attack began,

16       defendant had a clear view as the attack occurred right in front of him.  Id. at 27.

17   8.  After sounding the alarm, defendant retrieved his weapon, and then pointed it at

18       plaintiff and Jameson still yelling at them to stop what they were doing.  Id. at 30, 49,

19       50.

20   9.  Maynor asserts that Jameson's attack on plaintiff was "unprovoked."  Id. at 35.

21       After reviewing all of the evidence in the light most favorable to plaintiff, the court finds

22   that there is a genuine issue of material fact as to whether defendant was at least deliberately

23   indifferent to plaintiff's being attacked by inmate Jameson and that defendant's indifference

24   caused plaintiff injury.

25       As for the opening of plaintiff's cell, the clear inference from all the evidence is that

26   defendant opened the cell and, in viewing the evidence in the light most favorable to plaintiff, that

27   defendant opened the cell at the request of inmate Jameson.  The opening of plaintiff's cell,

28   however, does not, by itself, create a genuine issue of material fact as to whether defendant was

1    at least deliberately indifferent given that there is not sufficient evidence suggesting that when

2    defendant opened the cell he had sufficient reason to believe Jameson would attack plaintiff.

3          A genuine issue of material fact exists because of the combination of the opening of

4    plaintiff's cell, the evidence which suggests the attack on plaintiff was not provoked immediately

5    before the attack, and defendant's response after Jameson started stabbing plaintiff.  With respect

6    to defendant's response, there is evidence that defendant was aware that plaintiff was being

7    attacked with a knife at or near the beginning of the attack and that defendant waited at least 20

8    seconds before summoning help.  Also, defendant never fired his 40 mm launcher in the direction

9    of inmate Jameson even though there is evidence suggesting:  (1) defendant was aware Jameson

10   was the aggressor; and (2) for a significant portion of the attack Jameson was stabbing at plaintiff

11   from above while plaintiff lay on his back.  Finally, there is evidence defendant smiled during the

12   attack suggesting he was indifferent to it, if not enjoying it.

13         Defendant also asserts he is entitled to summary judgment under the "qualified immunity"

14   doctrine.  "Government officials enjoy qualified immunity from civil damages unless their

15   conduct violates 'clearly established statutory or constitutional rights of which a reasonable

16   person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

17   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the

18   court must consider the following:  (1) whether the alleged facts, taken in the light most favorable

19   to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right;

20   and (2) whether the right at issue was clearly established at the time of the incident. Saucier v.

21   Katz, 533 U.S. 194, 201 (2001).

22         Plaintiff's Eighth Amendment right not to be subjected to injury as a result of a

23   correctional officer's deliberate indifference to a substantial risk of harm was clearly established

24   on April 5, 2017.  As indicated above, there is at least a genuine issue of material fact as to

25   whether defendant violated this right and the court's conclusion in no way amounts to an

26   expansion of the circumstances under which a correctional officer can be held liable for failure to

27   protect.  Accordingly, defendant is not entitled to summary judgment on the basis of qualified

28   immunity.

1    Finally, defendant asserts any claim against him in his official capacity as an employee of

2    the State of California should be dismissed.  However, plaintiff does not assert a claim against

3    defendant in his official capacity in his complaint and the court does not recognize such a claim in

4    the court's July 13, 2018 screening order.

5    For all the foregoing reasons, the court will recommend that defendant's motion for

6    summary judgment be denied.

7    Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court assign a district

8    court judge to this case.

9    IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF

10   No. 39) be denied.

11   These findings and recommendations are submitted to the United States District Judge

12   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

13   after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  Such a document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

16   objections shall be served and filed within fourteen days after service of the objections.  The

17   parties are advised that failure to file objections within the specified time may waive the right to

18   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

19   Dated:  June 25, 2020

20                                                    _____

21                                                    CAROLYN K. DELANEY
                                                     UNITED STATES MAGISTRATE JUDGE

22

23

24   1
     thur0527.msj
25

26

27

28

8